Joseph H. **SOLIEN, Regional Director of the Fourteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**GLAZIERS & GLASSWORKERS LOCAL NO. 513, AFL–CIO**

and

**Glaziers and Glassworkers Local No. 558, AFL–CIO, Defendants.**

**No. 71 C 673(3).**

United States District Court, E. D. Missouri, E. D.

Nov. 18, 1971.

Joseph H. Solien, Regional Director, Frank E. Wallemann, Atty. N. L. R. B. Fourteenth Region, St. Louis, Mo., for plaintiff.

Gruenberg & Souders, St. Louis, Mo., for Glaziers & Glassworkers Local No. 513, and Local 558, AFL–CIO.

MEMORANDUM

WEBSTER, District Judge.

Plaintiff brings this action to enjoin respondents from engaging in acts de-

scribed in the complaint which are commonly known as secondary boycott activities in violation of § 8(b) (4) (B) of the National Labor Relations Act, as amended. Jurisdiction to grant such injunctive relief is founded upon 29 U.S.C. § 160(*l*). A hearing on the matter took place November 4, 1971 at 2 P.M. pursuant to an order to show cause issued October 29, 1971.

Defendant Local No. 513 and defendant Local No. 558 are affiliated with AFL–CIO. The "jurisdiction" of Local 558 is roughly the Western half of the State of Missouri and the "jurisdiction" of Local 513 is the remaining Eastern half of the State of Missouri which includes the City of St. James. Curtiss-Manes Construction Co., Inc. is a Missouri corporation which is engaged in business as a general contractor. At all times material, it had a collective bargaining agreement with Congress of Independent Unions ("C.I.U."). C.I.U. has filed an unfair labor practice charge against defendant Local 513 and a separate charge against defendant Local 558, both arising out of the subject matter of this suit. Pursuant to 29 U.S.C. § 160(*l*), petitioner seeks to enjoin defendants from such alleged practices pending the final disposition of the unfair labor practice charges before the Board.

George E. Dugan, Vice President of Dugans Paints, Inc., testified that Dugans is engaged in the retail and wholesale sale of glass, paint and wall products with its principal office in Sedalia, Missouri. Its purchases from outside the State of Missouri exceed $50,000 and the Interstate Commerce requirements of the act are duly noted. Curtiss-Manes engaged Dugans as subcontractor to furnish and install glass windows in connection with the construction of a building for St. James Bank in St. James, Missouri. The first part of October, 1971, Dugan went to the site to measure openings for the glass. He later saw a picket at the site. The only word he saw on the picket sign was "carpenters".

Dugans had eleven employees, two of whom were members of defendant Local 558. Following past practice with respect to jobs to be performed outside the jurisdiction of defendant Local 558 (as set forth in the labor agreement), Mr. Dugan telephoned Ron Brown, business agent of defendant Local 513, on October 12, 1971. Dugan told Brown about the St. James job and advised Brown that he wanted two glaziers for October 14, 15 and 16 and two days the following week. He asked Brown if the informational picket would effect the situation. Brown told Dugan that he would check and advise him first thing in the morning about it.

The next morning, Dugan had his men load the truck. At 8:45 A.M. he handed expense money to D. G. Peters, one of the glaziers. Dugan testified that Peters told him that Zanders (business agent for defendant Local 558) had told Peters there was a legal picket on the line and he should respect it. However, when called to testify by plaintiff, Peters stated that Zanders did not tell him not to cross the picket line. Dugan then received a call from Brown a few minutes later. Brown told him that he could not supply the glaziers because they would respect the picket line. Dugan inquired if Curtiss-Manes could supply glaziers from C.I.U. and Brown replied that he wouldn't work with them.

Dugan testified that Dugans has performed no work at the St. James' project. He had previously purchased the materials and made the frames, but has not otherwise installed the materials. Approximately $4,000 is tied up in the work to date.

Apparently, as a result of his conversations with Brown and his understanding of Peters' conversation with Zanders, Dugan made no further effort to perform subcontract work at the St. James' project. He did not contact Curtiss-Manes. In the conversation with Brown, Brown did not say anything about Curtiss-Manes. Dugan testified that Brown never said anything in conversation about helping if Curtiss-Manes

were non-union. On cross-examination, Dugan admitted that Brown said that he would send men, but he did not know if they would go across the line. Dugan did not talk to Zanders. He has not looked for glaziers from other sources. Dugans' contract with Local 558 expired April 1, 1971, but Mr. Dugan felt the obligation was binding because they were still bargaining for a new contract. On some occasions, Dugans has worked in the Local 513 territory with 558 personnel on the basis of an unwritten agreement to call Local 513 and clear whenever the work would require less than two days to perform.

Clark L. Libhart, National Executive Vice President of C.I.U. since 1958, testified that his union had collective bargaining agreements with approximately 300 employers in the St. Louis-Illinois-Missouri area. His union has had a contract with Curtiss-Manes for one year covering all employees. He was unable by positive testimony to attribute any work disputes in the area to efforts of either defendant.

■■■■■ Petitioner contends that it seeks only an interlocutory injunction and that the burden is less than would be required for permanent injunctive relief. Nonetheless, there must be some showing from which this court could fairly conclude that there was a reasonable probability that petitioner would prevail in establishing the unfair labor practices charged by Curtiss-Manes. The evidence at the hearing was to the contrary. While there was some evidence of communication between Local 513 and Local 558 with respect to the picket, the testimony adduced showed that such communication was prompted by and at the request of Dugans. No admissible testimony was offered to show that either defendant would or did prevent its members from exercising independent judgment as to whether or not to pass the informational picket line. In fact, Brown said that he would send men, but he did not know whether they would or would not cross the picket line. Mr. Dugan did not take the matter up with Curtiss-Manes or talk directly with the business agent of his own Local 558. No evidence was offered to establish the sponsorship of the picket or the contents of his sign. Evidence of past disputes between the glaziers and C.I.U. was negligible and at best inconclusive.

Finally, there is no evidence that Dugans attempted to do anything further in performance of his contract to install the windows after his conversation with one of his employees. His employees were not directed to go to the site, nor did he ask Brown to send employees to the job site after his conversation with Brown. He did not even know what the picket sign said. He did not communicate his problem to Curtiss-Manes. He simply "pulled in his horns."

While petitioner may be able to establish the existence of the secondary boycott in violation of the act in the course of its own proceedings, the evidence at the hearing was insufficient to persuade this court that there was reasonable cause to believe that a violation of the act, as charged, has been committed or that injunctive relief is just and proper.

Accordingly, the petition for injunction will be denied and the petition will be dismissed without prejudice.

So ordered.